**SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,**

v.

**FIFTH AVENUE COACH LINES, INC., Victor Muscat, Edward Krock, Thomas A. Bolan, Roy M. Cohn, Defendants.**

No. 67 Civ. 4182.

United States District Court
S. D. New York.

Jan. 19, 1970.

Supplemental Opinion Jan. 22, 1970.

Theodore Sonde, David M. Butowsky, Washington, D. C., Richard V. Bandler, New York City, for plaintiff.

Strasser, Spiegelberg, Fried & Frank, New York City, for Trustee-Receiver; Leon Silverman, New York City, of counsel.

Millard & Greene, New York City, for Fifth Avenue Coach Lines, Inc. and Thomas A. Bolan; Myron J. Greene, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Newton Glekel; George G. Galantz, New York City, of counsel.

Krieger, Chodash & Politan, Jersey City, N. J., for Gray Line Corp.; Harold Krieger, Nicholas H. Politan, Jersey City, N. J., of counsel.

## OPINION

McLEAN, District Judge.

The judgment in this action entered on August 12, 1968 determined that Fifth Avenue Coach Lines, Inc. (Fifth) is an investment company within the meaning of the Investment Company Act of 1940 and enjoined it from engaging in business in interstate commerce until it registered under Section 8 of the Act. Because of various acts of mismanagement discussed in detail in the court's opinion dated July 26, 1968 on the part of certain individuals formerly in control of Fifth's affairs, the court found it necessary to appoint a trustee-receiver to manage Fifth's business until further order of the court, to register Fifth as an investment company, and to take the steps necessary to hold a meeting of stockholders for the election of directors, no such meeting having been held since August 1966, D.C., 289 F.Supp. 3. Although Fifth served a notice of appeal from this judgment, the appeal has not been prosecuted. Since August 1968 the trustee-receiver has administered Fifth's affairs, under the direction of the court, and has accomplished much in the way of straightening out the tangle which confronted him at the time of his ap-

pointment. He now believes that the time has come to hold the stockholders' meeting which the judgment of August 12, 1968 contemplated, and accordingly, he has moved for an order authorizing him to proceed to call such a meeting for the election of directors. The holding of a stockholders' meeting of course will not ipso facto terminate the receivership. That will continue until the court believes it to be no longer necessary for the stockholders' protection.

The problem arises as to what to do with a large block of Fifth's stock held by Gray Line Corporation (Gray Line). Gray Line is a shell corporation, with no business and no assets except its holdings of stock in Fifth and in Gateway National Bank (Gateway). Gray Line owns approximately 213,000 shares of Fifth's stock which constitute approximately 24 per cent of Fifth's outstanding stock. It holds 26,280 shares of Gateway stock which, improperly as the court found, had been transferred to Gray Line by Fifth. 181,102 shares of the 213,000 shares of Fifth's stock owned by Gray Line are pledged to Fifth to secure the payment of advances made by Fifth to Gray Line aggregating something over $1,600,000. Gray Line is also indebted to Fifth's wholly-owned subsidiary, Surface Transit Company (Surface) for an additional $400,000 in round figures, making a total indebtedness of approximately $2,062,000. Gray Line's stock in Gateway is also pledged to Fifth to secure the payment by Gray Line to Fifth of the purchase price of this stock which Fifth had purported to sell to Gray Line.

By order dated March 13, 1969, this court authorized the trustee-receiver to take such steps as might be necessary to establish Fifth's ownership of the Gateway stock and to foreclose the pledge on the 181,102 shares of Fifth's stock held by Fifth as security for its advances to Gray Line. An action to foreclose the pledge has been begun by the trustee-re-

ceiver against Gray Line in the state court. It is still pending.

Gray Line was not made a party to this action. There was enough evidence about it at the trial, however, to enable the court to find that Gray Line was the vehicle through which the individual defendants Muscat and Cohn were able to maintain their control of Fifth. The control was "circular," for not only does Gray Line own what appears to be a controlling interest in Fifth, but conversely Fifth, through its whollyowned subsidiary Surface, owns what appears to be a controlling interest in Gray Line, 132,500 shares, or 37 per cent of Gray Line's outstanding stock.

Although no evidence about Gray Line has been taken on the present motion, it has been stated without contradiction that the present directors of Gray Line, four in number, were originally nominees of Muscat and Cohn. Apparently there has not been a meeting of stockholders of Gray Line since these directors took office. The Securities and Exchange Commission (Commission) claims that Gray Line is an investment company and should register as such under the Act. Gray Line has not registered but instead has applied to the Commission for an order exempting it from registration. The Commission has not yet acted on that application.

Under these circumstances, the trustee-receiver has asked that the Fifth stock owned by Gray Line be "sterilized," i. e., that it not be permitted to vote at the forthcoming meeting of Fifth's stockholders. This request is opposed by Newton Glekel who, on November 4, 1969, entered into a contract with Gray Line to purchase its stock in Fifth at a price of $12 per share. The total price is $2,577,636 for all the stock, which the contract says consists of 214,-803 shares.* This contract was signed on behalf of Gray Line by three directors. The fourth director, Philip C. Goldstick, who is also the president of

---

* The discrepancy between this figure and the 213,000 shares which the trustee-receiver says Gray Line owns has not been explained.

Gray Line and apparently the man most active in its affairs, did not sign the contract and opposes it. Mr. Goldstick had previously assured the trustee-receiver by letter dated June 19, 1969 that Gray Line would not dispose of any of its assets unless the trustee-receiver gave his written consent to such disposition. The trustee-receiver has not consented to the sale to Mr. Glekel. On the contrary, he opposes it on a variety of grounds, including the ground that it would violate the Investment Company Act.

The Commission also opposes the sale and views with alarm the continued existence of a large block of Fifth stock in a single ownership. Indeed, the Commission goes so far as to suggest that the safest course would be to liquidate Fifth rather than to risk a possible repetition of the situation which necessitated the receivership in the first place.

The contract between Mr. Glekel and Gray Line provides that it shall be subject to the approval of the stockholders of Gray Line, of the Commission and of this court, but as between the parties to the contract, the obtaining of these approvals may be waived. Gray Line and Mr. Glekel have not waived the requirement of court approval, however, but have submitted themselves to the jurisdiction of this court and have asked the court to approve the sale of the stock to Mr. Glekel and its subsequent voting by him at Fifth's stockholders' meeting. It is apparent that the right to vote the stock is most important to Mr. Glekel and that he is purchasing it for the purpose of obtaining control of Fifth.

It has been the court's purpose throughout this receivership to follow the course best calculated to serve the interests of Fifth's stockholders, for whose protection the receivership was established. In the present instance the problem is complicated by the fact that not only is Fifth a major creditor of Gray Line, but it is also, through Surface, a major stockholder of Gray Line. It will be affected in both capacities by the ultimate disposition of Gray Line's stock in Fifth.

Considering the situation first from the point of view of Gray Line and its stockholders, the proposal is that Gray Line sell its principal asset for approximately $2,577,000. Whether or not this is a fair price cannot be determined on the basis of the information submitted on this motion. Gray Line's directors are not unanimous in approving this proposed sale, and indeed, Mr. Goldstick, who disapproves, is the principal executive officer of the company. In view of the magnitude of this transaction and its importance to Gray Line, it appears to the court that at the very least the stockholders of Gray Line should be given an opportunity to decide whether or not they wish to authorize the sale of the stock at this price.

Moreover, the claim is made that Gray Line is an investment company and cannot legally sell the stock without first registering under the Act. Whether or not Gray Line is an investment company cannot be determined upon the present record. It would seem sensible to wait to see whether the Commission approves Gray Line's application for exemption from the Investment Company Act and if it does not, whether the Commission then takes action to compel Gray Line to register and to enjoin the sale of the stock. Under these circumstances, the court cannot approve the proposed transaction at this time.

It will doubtless require several months to call a stockholders' meeting of Gray Line and to obtain a decision from the Commission. Mr. Glekel may not wish to wait and may prefer to cancel his agreement to purchase. That is a decision which he must make for himself and a risk which Gray Line must run.

In the meantime, the trustee-receiver must be free to proceed with his foreclosure action in the state court. On the basis of the facts heretofore disclosed, it is difficult to see what defense Gray Line could have to that action, but that is

a matter for the state court to decide. If foreclosure is granted, and the trustee-receiver acquires the pledged stock in satisfaction, in whole or in part, of Gray Line's indebtedness to Fifth, the result may be that the stock will be cancelled. This court's order of March 13, 1969 authorizes the trustee-receiver to cancel it. Cancellation of the stock, of course, would eliminate the present problem.

The question remains as to what should be done about holding a stockholders' meeting while Gray Line's stock in Fifth remains in its present uncertain status. The court believes that plans for the meeting should proceed but that the block of stock owned by Gray Line should not be voted at the meeting in view of the uncertainties which now exist concerning it. It is high time that the other stockholders of Fifth have an opportunity which they have not had in some years to elect a board of directors. What will happen to the receivership when that has been accomplished remains to be seen.

The court believes that it would be premature to direct liquidation of the company now. That possibility can be considered again later on if circumstances seems to warrant it.

The motion of the trustee-receiver is granted to the extent indicated above. The date of the meeting and the other details will be provided for in the order. The record date should not be more than forty days before the date of the meeting. The number of directors to be elected may be fixed at ten in accordance with the latest resolution of Fifth's board of directors on the subject. The order shall provide that no expenses of solicitation of proxies shall be paid by the trustee-receiver out of Fifth's funds, unless previously authorized by the court.

Settle order on notice.

### SUPPLEMENTAL OPINION

My opinion dated January 19, 1970 stated that "An action to foreclose the pledge has been begun by the trustee-receiver against Gray Line in the state court." The attorney for the trustee-receiver has since informed me that although at the hearing before me counsel referred to the action as being in the state court, this was an error and that the action is actually in the federal court. He has also informed me that the action merely seeks to recover a judgment in the amount of Gray Line's debt to Fifth and that the trustee-receiver's application for leave to foreclose the pledge has been addressed, not to the court, but to the Securities and Exchange Commission. My opinion is to be deemed corrected accordingly. These changes in no way affect the conclusion reached in that opinion.

So ordered.